<a>
</a>

FILED
2011 Nov-14 AM 09:54
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **JESSIE WILL WOMACK,** ) | |
| ) | |
| **Claimant,** ) | |
| ) | |
| vs. ) | **Civil Action No. CV-10-S-3141-S** |
| ) | |
| **MICHAEL J. ASTRUE,** ) | |
| **Commissioner, Social Security** ) | |
| **Administration,** ) | |
| ) | |
| **Defendant.** ) | |

## ENTRY OF JUDGMENT UNDER SENTENCE FOUR
## OF 42 U.S.C. § 405(g) AND
## ORDER OF REMAND

Claimant Jessie Will Womack commenced this action on November 17, 2010, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner affirming the decision of the Administrative Law Judge denying her claim for supplemental security income benefits. For the reasons stated herein, the court finds that the Commissioner's ruling is due to be reversed, and this case should be remanded to the Commissioner for further proceedings.

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied. *See Lamb v.*

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).

Claimant argues that the Commissioner's decision was neither supported by substantial evidence nor in accordance with legal standards. Specifically, claimant asserts that the ALJ erred in failing to more fully develop the record for evidence of claimant's mental impairments. Upon consideration, the court finds that claimant's contention has merit.

A claimant bears the ultimate burden of producing evidence to support her disability claim. *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. §§ 416.912(a), (c)). Even so, the ALJ

> has an obligation to develop a full and fair record, even if the claimant is represented by counsel. *Cowart v. Schweiker,* 662 F.2d 731, 735 (11th Cir. 1981). The ALJ is not required to seek additional independent expert medical testimony before making a disability determination *if the record is sufficient and additional expert testimony is not necessary for an informed decision. Wilson v. Apfel,* 179 F.3d 1276, 1278 (11th Cir. 1999) (holding the record, which included the opinion of several physicians, was sufficient for the ALJ to arrive at a decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988) (holding the ALJ must order a consultative exam when it is necessary for an informed decision).

*Nation v. Barnhart,* 153 Fed. Appx. 597, 598 (11th Cir. 2005) (emphasis supplied).

Claimant asserts that the ALJ should have obtained additional evidence of her mental impairments, because her school records indicate that she was given the

2

designation "EMR" (educable mentally retarded), but that designation was not recognized by the ALJ, or by claimant's attorney, during the administrative proceedings.[1] The ALJ's characterization of claimant's mental impairments varied throughout the administrative process. In his administrative opinion, the ALJ stated:

> The claimant testified that she was illiterate, but her school records did not indicate special education. Moreover, as the claimant testified, she withdrew from school because of a pregnancy. Actual school testing indicates that she earned a 92% in May 1978 on her school literacy test . . ., she has a driver's license, and on September 1, 1987, she requested that her transcript be sent to Southern Junior Business College.[2]

During the administrative hearing, the ALJ stated that he didn't "see anything in the school records . . . that demonstrates Special Education."[3] However, later during the same hearing, the ALJ had the following exchange with the vocational expert (VE):

> Q    Could you summarize the claimant's age, education, past relevant work, including physical and mental demands, skills and transferable skills and jobs with DOTs?
>
> A    Yes, currently she's 46 years old, is still, remains a younger individual. She does not have a high school education as she indicated.

---

[1] *See* Tr. 170.

[2] Tr. 46.

[3] Tr. 23. The ALJ then stated that he didn't "see a 12.05 indication," presumably meaning that he saw no evidence that claimant could satisfy the requirements of Listing 12.05. *Id.* Claimant's attorney agreed, stating, "I don't think it's 12.05." *Id.* The court understands, therefore, that claimant did not argue during the administrative proceedings that she satisfied Listing 12.05. There is no good explanation for that failure on the part of claimant's counsel. Even so, the court believes there is a sufficient evidence of mental impairment to warrant further inquiry of this claim.

> She failed the functional literacy test and has test scores that would suggest that's probably accurate. I saw no indication that she was in Special Education courses, but she did poorly in many of her classes that would be influenced by those kinds of problems. Apparently, she's worked —
>
> Q    So the 92 and the function, on the functional literacy was a failure?
>
> A    Yes.
>
> Q    Okay.
>
> A    Yeah, that and the, the scores assume, the scores there in reading, she's at the 19th percentile nationally, the 1st percentile in math and the 4th percentile in language so —
>
> Q    Okay.
>
> ATTY:    And the lower the percentile, the poorer they do, is that what you're saying?
>
> VE:    Yes, the one at the one percentile level assumed that 99 people picked at random would do better in math than she has done, or would be expected to do. So I think probably there's adequate evidence that she probably was in Special Education.[4]

The test results referred to in this discussion are part of claimant's school records from 1978 and 1979. On a Differential Aptitude Test administered in 1978, claimant scored in the 20th percentile in verbal reasoning, the 15th percentile in numerical ability, the 10th percentile in abstract reasoning, the 3rd percentile in "clerical sp. & Acc.," the 10th percentile in mechanical reasoning, the 5th percentile

---

[4] Tr. 33-34.

4

in space relations, the 10th percentile in spelling, and the 3rd percentile in language usage. On a Functional Literacy Test performed in May of 1978, claimant scored a 92%, resulting in a "pass." The records from an unspecified standard test administered in April of 1979 indicate that claimant ranked in the 19th percentile nationwide in reading, the 1st percentile in math, the 4th percentile in language, and the14th percentile in spelling. Another record from a Functional Literacy Test administered on May 3, 1979 indicated that claimant scored in the 22nd percentile in math, resulting in a "fail."

In light of her extraordinarily low scores on all the other standardized tests, claimant's score of 92 on the 1978 Functional Literacy Test seems inexplicable. Furthermore, the court does not understand why the vocational expert stated that the 92 score was failing, when the school records clearly indicate that claimant passed the test. In any event, the weight of the evidence as a whole indicates that claimant was a poor performer in classes and on standardized tests, and that she was enrolled in a special education program for educable mentally retarded students. In light of that evidence, the court concludes that the ALJ should have further developed the record regarding claimant's mental impairments and, in particular, he should have ordered IQ testing.

Claimant's IQ scores are significant because she claims she is disabled pursuant to Listing 12.05C, which provides:

> *Mental Retardation.* Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> C.   A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[. . . .]

20 C.F.R. pt. 404, subpt. P, appx. 1, § 12.05 (listings) (all italics in original). The ALJ already found that claimant suffers from the severe impairment of pain syndrome in her left hip, back and foot,[5] and that she was limited to the performance of sedentary work.[6] Although claimant's pain symptoms, considered alone, were not sufficiently severe to render her disabled, a severe impairment causing a restriction to sedentary work certainly can be said to impose a "significant work-related limitation of function" as required by subsection C of Listing 12.05. Thus, claimant would be considered disabled, regardless of her residual functional capacity, if she

---

[5]Tr. 44.
[6]Tr. 45.

had an IQ score between 60 and 70. As the record does not contain sufficient information to determine claimant's current IQ, the ALJ should have ordered a consultative examination and IQ testing. Remand is warranted for the Commissioner to arrange such testing and to give further consideration to claimant's satisfaction of Listing 12.05C.

In accordance with the foregoing, the decision of the Commissioner is reversed, and this action is REMANDED to the Commissioner of the Social Security Administration for further proceedings consistent with this memorandum opinion and order.

The Clerk is directed to close this file.

DONE this 14th day of November, 2011.

_____
United States District Judge